(Judge Laubie of the seventh Circuit, sitting in place of Judge Marvin.)

THE CLEVELAND SPECIAL POLICE CO. v. CHARLES A. BRAYTON.

A CORPORATION MAY MAINTAIN AN ACTION FOR DAMAGES FOR SLANDER OF ITS SERVANT.

A corporation may maintain an action for damages against a person who has slandered a servant of such corporation, when by reason of such slander the business of the corporation had been injured.

ERROR to Court of Common Pleas.

LAUBIE, J.

The Cleveland Special Police Company, a corporation, v. Charles A. Brayton, is here on error, and the question is whether or not the demurrer was properly sustained.

The general demurrer to the petition was sustained in the court below, and, not desiring to plead further, final judgment was rendered and exception taken, and the case is now brought here for revision.

The petition recites that William K. Maher at the time in question was the general manager and treasurer and owner of a majority of the stock of said corporation. That the defendant contriving to injure said plaintiff, this corporation, and to bring it into public ridicule, and destroy its business, and particularly to destroy that branch of its business which consisted of doing night-watching in and upon Prospect street, between Perry street and Case avenue, in the city of Cleveland, Ohio, where the plaintiff had a large profitable business, did on or about the first day of March, 1897, falsely and maliciously speak and publish of and concerning the said William K. Maher, then and there well knowing that the said William K. Maher was the general manager and treasurer of said plaintiff, the false and malicious words following, to-wit:

"Maher" (meaning the said William K. Maher) "is a bad man, a dangerous character, and under suspicion, and not to be trusted. There was a barn burned up here, and he is under suspicion of setting it on fire." Then and there meaning that the said William K. Maher was a bad and dangerous character, and that he had been, and is guilty of the crime of arson, and was regarded as guilty of said crime, in so much that many of the persons, neighbors and citizens to whom said defendant stated and published said false and malicious words and to whom the innocence and integrity of William K. Maher were unknown, and knowing the connection of said Maher with this plaintiff, have, by reason of the speaking and publishing of said false, malicious, and defamatory words, believed said Maher to have been, and to be a bad and dangerous character, and guilty of arson, and the police company to be entirely unworthy of confidence and patronage (from their knowledge of Maher's connection with said company). And they have, by reason thereof, since that time, wholly refused to patronize or have any business transactions with this plaintiff as they were accustomed to have prior to said time; and that by reason thereof, said company has lost its large and profitable business of night-watching on Prospect street in the city of Cleveland,

and has suffered a falling off of its business, and has been injured in its prospects and good will. And plaintiff says that by reason of the premises it has been injured to its damage in the sum of ten thousand dollars; and it also asks for further damages by reason thereof.

The charge is in reference to this or the innuendo that the defendant contrived to injure the plaintiff and destroy its business and, in so doing, uttered these words and published them to the various parties in that neighborhood. So that the allegation, as referred to, is of an intention of injuring plaintiff's business and destroying it; and the subsequent allegation is that it did have that effect.

There is no direct allegation of any words spoken of Maher in his character of general manager and treasurer of this institution; no words expressly referred to that, or to the nature or character of his employment; the words being generally as I have read, that he was a bad man, a dangerous character and under suspicion, and could not be trusted, and was suspected of having burned a barn up there.

If this were a suit upon the part of Maher directly against Brayton, there could be no question but what the suit might be maintained, and maintained, we think, as spoken of in his character or in reference to his employment in his character as manager of this institution and of his employment as such manager, by the servants of the corporation,—that, according to the petition, being his employment especially.

Now it is not necessary that the words spoken, should expressly refer to, characterize by name in any way, that employment or business. It is sufficient if, in connection with the subject-matter as explained by the innuendoes, that the words spoken, must, of necessity, refer to him in his character of servant or officer or of his employment. We have that principle expressed in his work of Newell on Definiiton of Slander and Libel, page 174, under the head "Words must touch the party in his trade, office or profession":

"His special office, profession or trade need not be expressly referred to, if the charge made be such as must necessarily affect it." If the charge made be such as must necessarily affect him. Does it take into consideration that this petition shows that Mr. Maher's employment or office was that of general manager of this defective company, and that the allegation, the intention and design of the defendant, was to injure the business of that company? It is apparent to us that these words, thus expressed, must, of necessity, have affected the employment of Mr. Maher,—the manner of the accusation that Mr. Maher was "a bad man, a dangerous character and under suspicion, and not to be trusted. There was a barn burned up here, and he is under suspicion of setting it on fire."

Suspicion of a man whose employment or business was that of a detective and of special police guarding the property of individuals at night! Such words must, of necessity, have referred to him in his employment, —must have affected him at least in his employment, and that is sufficient for the rule in question.

The principle point, however, is whether or not the plaintiff, the employer of Mr. Maher, could maintain the action,—and this is a novel proposition.

Undoubtedly, a general manager and treasurer of a corporation is a servant of that corporation. You can characterize him as agent if you desire, but, after all, he is a servant of that corporation. And, if, therefore, a master may maintain an action against a slanderer of a servant, which affects his business, then that principle ought to apply to a master

like this although that master may be a corporation and not in fact an individual.

You will find in Wood's Law of Master and Servant, sec. 239, p. 471, this statement: "So, too, an action lies for preventing a servant from laboring for his employer, by menaces and threats, or by slandering and libelling him so that the master is deprived of his services or for in any manner persuading or inducing him to leave the master's employment, and it is not necessary to show that the purpose was to induce the servant to enter the defendant's service, or that he was to derive any benefit or advantage thereform;" And in a note on the same page, it was held in Ashley v. Harrison, Peake, 94; 1 Esp., 48, that a master could not recover for an injury to his business, resulting from a slander or libel aganst one of his performers, whereby she was deterred from appearing on the stage, upon the ground that the damage is too remote, but the doctrine of this case has been denied by the High Court of Justice in a case recently decided, and a contrary doctrine announced. Thus, in Riding v. Smith (See Albany Law Journal, Vol., 13, p. 441), the plaintiff, a tradesman, brought an action against the defendant for slanderous words spoken of the plaintiff's assistant in his business (in this case his wife), whereby his business had fallen off and been injured. The defendant charged the wife with adultery. The speaking of the words, and the consequent special damage having been proved, the court held that a recovery could be had upon two grounds, one of which was that the falling off of the plaintiff's business was the natural consequence of the publication of the words, and the good sense of this doctrine will commend it as an authority. There never was any good reason given, why, when a master had a temporal loss from a slander or libel published against his servant, he should not recover for it as well as for a loss resulting from the personal injury inflicted upon his person, or when he had been deprived of his services by threats."

It is unnecessary, and I will not refer to other works,--text books, and others where I find this case referred to and spoken of with commendation. It seems to be a late case of the establishment of the doctrine that we think is eminently just and proper. In that case the suit was commenced by husband and wife, but the court determined that the wife had no cause of action and that the damages were alone to the husband. She was an assistant in his store or in his business, and slanderous words, spoken as I have already said, charged her with adultery; and it was shown that in consequence of that, the plaintiff's business had been injured and had fallen off to a large extent.

There is another case in point, perhaps, where an inn-keeper had a similar charge made against his wife, and it affected his business, and he was entitled, as the court held, to recover.

We see no distinction and can make none between the case at bar and the case I have referred to especially, in principle.

The case particularly we have here seems to be stronger than the one I have cited Here was Maher, the general manager of the corporation, and the business of that corporation seems to be the guarding of personal property largely at night, for its preservation. Therefore, not only as a corporation, but as a manager, it had a reputation, for it could have such a reputation, and the weight of the authorities seem to think, that a corporation may be injured in its reputation as well as in its business. It had a reputation to sustain of having, at least, honest men in its employment to conduct its business, to whom people could entrust their property; and

when it was publicly characterized as against the principle one of the corporation, the general manager of the association, that he was "a bad man, a dangerous character, and under suspicion, and not to be trusted,"that he was accused and supposed to be guilty of setting fire to a barn,—when that was said of him publicly, it must naturally affect and re-act upon the corporation itself and its employment and affect its business. No one thereafter would be so free to trust the corporation or its service.

The allegation is that this was intended to affect its business, and that it did in fact.

I say, therefore, that this seems to be a broader case even than the one that I have referred to.

With these views before us, we think the court below erred in sustaining the demurrer to the petition. The case should be submitted to a jury, and the questions passed upon the facts of the case as might be developed by the testimony.

The judgment of the court below will have to be reversed, and case remanded for error.

*T. H. Dunlap* , for plaintiff.

*G*fr doo *H,d&lue*ng*r*ee of *dl*na*i*.dt *n*

---

## CONTRACT OF GUARANTY.

[Lucas Circuit Court, September 26, 1898.]

King, Haynes and Parker, JJ.